IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LORITA L. LAJOUJ, individually and as personal representative of DANNY LAJOUJ, deceased, and as next of friend of ALTHA LAJOUJ, DANIEL LAJOUJ, MANNY LAJOUJ, PENITA LAJOUJ, KIOBI LAJOUJ, and TORI LAJOUJ, minors,<br><br>        Plaintiffs,<br><br>        vs.<br><br>KWAJALEIN RANGE SERVICES, LLC, BECHTEL NATIONAL, INC., BECHTEL CORPORATION, UNITED STATES OF AMERICA, UNITED STATES ARMY KWAJALEIN ATOLL, UNITED STATES ARMY, DEPARTMENT OF DEFENSE, and DOES 1-100,<br><br>        Defendants. | Civ. No. 08-00082 ACK-KSC |

ORDER GRANTING THE KRS DEFENDANTS' MOTION TO DISMISS BASED ON
FORUM NON CONVENIENS

PROCEDURAL BACKGROUND

On February 22, 2008, Lorita L. Lajouj, individually

and as personal representative of Danny Lajouj, deceased, and as

next of friend for minors Altha Lajouj (aka Alta Kiluwe), Daniel

Lajouj, Manny Lajouj, Penita (aka Benita) Lajouj, Kiobi Lajouj,

and Tori (aka Dorie) Lajouj (collectively "Plaintiffs"), filed a

Complaint in this Court ("DCHI Complaint") against Kwajalein

1

Range Services, LLC ("KRS"), Bechtel National, Inc., Bechtel Corporation (collectively "the KRS Defendants"), United States of America ("United States"), United States Army Kwajalein Atoll ("USAKA"), United States Army, Department of Defense (collectively "the federal Defendants") and Does 1-100 (collectively "Defendants").[1]  Plaintiffs allege that various negligent acts and omissions by Defendants caused Danny Lajouj's injuries, death, and damages in an explosion aboard the LCU 1667 Manassas vessel ("LCU Manassas") on February 24, 2006.  See DCHI Compl. ¶¶ 21, 36.

On March 21, 2008, Defendants KRS, Bechtel National, Inc., and Bechtel Corporation (collectively "the KRS Defendants") filed a Motion to Dismiss on the grounds of forum non conveniens ("FNC Motion"), in favor of litigation in the courts of the Republic of the Marshall Islands ("RMI").[2]  Plaintiffs filed a Memorandum in Opposition to the KRS Defendants' Motion to Dismiss ("Opposition") on May 1, 2008.  On May 8, 2008, the KRS Defendants filed a Reply to Plaintiffs' Opposition to their Motion ("Reply").

On May 19, 2008, the Court held a hearing on the FNC

---

[1] On February 22, 2008, this Court issued an Order granting Plaintiff Lorita L. Lajouj's ex parte motion for appointment as next of friend for the other Plaintiffs.  The magistrate judge issued an identical Order on February 25, 2008.

[2] On May 19, 2008, the United States filed a Statement of No Opposition to the FNC Motion.

Motion.  The Court took the FNC Motion under advisement and ordered the United States to file any contemplated motion to dismiss within two weeks.  The Court further directed the parties to file supplemental memoranda to address certain issues by June 16, 2008.[3]

On June 2, 2008, the United States, on behalf of the federal Defendants, filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction ("SMJ Motion").[4]  Included in the SMJ Motion were the United States's supplemental responses to issues raised by the FNC Motion.[5]  On June 16, 2008, Plaintiffs and the KRS

---

[3] Specifically, the Court instructed the parties to address the following issues:

> 1.  Whether the United States is subject to admiralty jurisdiction in the District of Hawaii and/or the RMI;
> 2. Whether admiralty law would apply in this case where the ship was in dry dock at the time of the accident;
> 3. Whether the United States consented to this suit in admiralty;
> 4.  Whether the incident alleged in Plaintiffs' Complaint constituted a "commercial activity";
> 5. Whether the Court can grant the FNC Motion if the  RMI does not have jurisdiction over the United States; and
> 6.  Whether the naming of the personal representative in the RMI is sufficient for this case filed in the District of Hawaii.

[4] The KRS Defendants filed a Statement of No Opposition to the SMJ Motion on June 16, 2008.

[5] The Court held a hearing to address the SMJ Motion on July 3, 2008.  After the hearing, on July 7, 2008, the United States filed a Supplemental Memorandum regarding admiralty jurisdiction in response to issues raised at the hearing.  Per the Court's

Defendants filed their supplemental memoranda regarding the FNC
Motion.[6]

## FACTUAL BACKGROUND[7]

This case arises out of an incident that occurred on
the LCU Manassas vessel while it was undergoing a major vessel
overhaul.  See DCHI Compl. ¶¶ 2, 21.  Plaintiffs assert that the
vessel was in "dry dock" while undergoing repairs.  See id. ¶ 21.
The United States, however, contends that the vessel was not in
"dry dock" but rather was "on a cradle on a marine railway."  See
SMJ Motion at 10.  In any event, the parties agree that the
vessel repair was taking place on USAKA, a military base located
on the Kwajalein Atoll in the RMI.[8]  See DCHI Compl. ¶ 2; SMJ
Motion at 2.  USAKA houses the Ronald Reagan Ballistic Missile
Defense Test Site.  DCHI Compl. ¶ 2.  USAKA is managed and
operated by KRS, a joint venture of Defendant Bechtel National,

---

request, Plaintiffs also provided the Court with copies of the
letters denying their administrative claims.  The Court's ruling
on the SMJ Motion is set forth in a separate Order.

[6] On June 23, 2008, the KRS Defendants filed a Supplemental
Memorandum to amend their responses to questions 2 and 6 after
having received a copy of the complaint that Plaintiffs filed in
the RMI.

[7] The facts as recited in this Order are for the purpose of
disposing of this motion and are not to be construed as findings
of fact that the parties may rely on in future proceedings in
this case.

[8] Kwajalein is located 2,100 nautical miles southwest of
Honolulu, Hawaii and is the world's largest coral atoll.

Inc. and non-party Lockheed Martin Services, Inc.  Id. ¶ 8.  At
the time of the incident, Plaintiff Danny Lajouj ("Lajouj") was
employed by the Chugach Development Corporation ("Chugach"), a
major subcontractor to KRS.  Id. ¶¶ 7, 21.

On February 24, 2006, Lajouj was working below the deck
of the LCU Manassas when he was killed in an explosion.  Id. ¶
21.  As part of a planned project reportedly authorized by
Defendants, Lajouj had been spray painting in a confined space
inside the port ballast.  Id. ¶ 22.  Plaintiffs allege that the
area was inadequately ventilated and became saturated with a
highly combustible atmosphere from the spray paint.  Id.  Lajouj
was using a "drop light"[9] for illumination while he worked.  Id.
¶ 23.  As he finished the task and turned to leave through a
narrow hatchway, the drop light broke.  Id.

The broken lightbulb in the drop light sparked an
instantaneous explosion.  Id.  The force of the explosion
propelled Lajouj ten feet away into the starboard ballast area
bulkhead.  Id. ¶ 24.  He suffered a skull fracture, severe
thermal burns over his body, and death.  Id.

On February 8, 2008, the High Court of the RMI
appointed Lajouj's wife, Lorita L. Lajouj, as his personal
representative for the purpose of pursuing a wrongful death

_____

[9] A "drop light" is "an electric light suspended by a cord
or on a portable extension."  See Webster's Ninth New Collegiate
Dictionary at 385 (1986).

action under Marshallese law. Id. ¶ 5. On February 22, 2008,
Plaintiff Lorita L. Lajouj filed a complaint in the High Court of
the RMI ("RMI Complaint") on behalf of decedent Lajouj, herself,
and their six minor children. Id. ¶¶ 3-6. That same day,
Plaintiffs submitted administrative claims under the Federal Tort
Claims Act ("FTCA") and the Foreign Claims Act ("FCA"). See
Declaration of Plaintiff's Counsel Joseph P.H. Ahuna, Jr. ("Ahuna
Decl.") ¶ 3. Those claims were subsequently denied.[10] Id. ¶¶ 4,

---

[10] In a letter dated April 16, 2008, the U.S. Army Claims
Service (the "Service") responded to Plaintiffs' request for
administrative review. See Letter from U.S. Army Claims Service
to Plaintiffs' Counsel (Apr. 16, 2008) ("Apr. 16, 2008 Letter");
Ahuna Decl. ¶ 4. The Service explained that Plaintiffs' claims
were considered under the FCA, in accordance with relevant
provisions of the Compact of Free Association ("Compact")
executed by the RMI and the United States, the Status of Force
Agreement concluded pursuant to § 323 of the Compact, and the
"Agreed Minutes" to the SOFA. See Apr. 16, 2008 Letter.
According to the Service, the FTCA was "not applicable because it
excludes claims arising outside the United States." See id.;
Ahuna Decl. ¶ 4. The Service denied Plaintiffs' FCA claim
"because the FCA, as implemented by [Army Regulation] 27-20,
Claims, Chapter 10, prohibits payment to contractor employees or
their dependants for whom benefits are provided under any
workers' compensation law." See Apr. 16, 2008 Letter; Ahuna
Decl. ¶ 5. The Service noted that Plaintiffs have received a
$3,000 burial payment and weekly payments of $159.82 as worker's
compensation benefits under the Longshore and Harbor Workers'
Compensation Act ("LHWCA") through Chugach, Lajouj's employer.
See Ahuna Decl. ¶ 5; Apr. 16, 2008 Letter; Opposition at 13.
Moreover, the Service determined that there was no evidence of
negligence on the part of the United States because the United
States was not involved in assigning work or selecting the lights
that Lajouj used on February 24, 2006.
    Plaintiffs subsequently requested reconsideration of the
Service's denial of their claims. Plaintiffs were informed that
their request would be held in abeyance until the completion of
this litigation. See Letter from U.S. Army Claims Service to
Plaintiffs' Counsel (June 3, 2008).

5.

Plaintiffs also filed the instant lawsuit in this Court on February 22, 2008.  In the DCHI Complaint, Plaintiffs allege that Lajouj's injuries, death, and damages were caused by various negligent acts and omissions by Defendants, such as, <u>inter alia</u>: failing to implement proper mitigating controls for dangerous workplace conditions; failing to establish and enforce workplace safety and health programs and standards; failing to provide adequate air ventilation in the area where Lajouj was working; supplying Lajouj with a non-explosive-proof drop light and failing to provide an explosive-proof drop light; failing to implement controls to prevent the build-up of a flammable atmosphere from the spray paint; failing to inform Chugach employees of safety and health hazards; failing to enforce on-site safety rules; failing to perform a job hazard analysis; failing to comply with the "Confined Space Entry" certification program; and failing to inspect the job site and eliminate dangerous conditions on the LCU Manassas.  <u>See</u> DCHI Compl. ¶ 37.

<b><u>STANDARD</u></b>

Under the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>, a "district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties."  <u>Lueck v. Sundstrand Corp.</u>, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501,

504 (1947)).  "In exercising this discretion, a court will
consider whether an adequate alternative forum exists and whether
the balance of public and private interests favors a different
forum."  Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1177
(9th Cir. 2006).

        "The forum non conveniens determination is committed to
the sound discretion" of the district court.  Piper Aircraft Co.
v. Reyno, 454 U.S. 235, 257 (1982); Gemini Capital Group, Inc. v.
Yap Fishing Corp., 150 F.3d 1088, 1091 (9th Cir. 1998); Creative
Technology, Ltd. v. Aztech Sys. Pte, Ltd., 61 F.3d 696, 699 (9th
Cir. 1995) (quoting Ceramic Corp. of America v. Inka Maritime
Corp, 1 F.3d 947, 949 (9th Cir. 1993)).  The district court "may
be reversed only when there has been a clear abuse of discretion;
where the court has considered all relevant public and private
interest factors, and where its balancing of these factors is
reasonable, its decision deserves substantial deference."  Piper
Aircraft, 454 U.S. at 257; Creative Technology, 61 F.3d at 699
(quoting Ceramic Corp., 1 F.3d at 949).

        Generally, there is a strong presumption in favor of
honoring the plaintiff's choice of forum "because a showing of
convenience by a party who has been sued in his home forum will
usually outweigh the inconvenience the defendant may have shown."
Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 767
(9th Cir. 1991).  Here, however, Plaintiffs are all residents and

8

citizens of the RMI; none are Hawaii residents.  See DCHI Compl.
¶¶ 3-5.  Therefore, Plaintiffs' choice of forum is entitled to
less deference than that accorded to a Hawaii resident suing in
Hawaii.  See Piper Aircraft, 454 U.S. at 256 (stating that "a
foreign plaintiff's choice deserves less deference"); Gemini
Capital Group, 150 F.3d at 1091 (finding that the "district court
correctly acted on Ninth Circuit authority" in granting less
deference to the plaintiffs' choice of Hawaii as a forum where
the plaintiffs were not residents of Hawaii); but see Ravelo
Monegro v. Rosa, 211 F.3d 509, 514 (9th Cir. 2000) (noting that
"less deference is not the same thing as no deference").

## DISCUSSION

        The KRS Defendants ask this Court to dismiss
Plaintiffs' Complaint based on the doctrine of forum non
conveniens, in favor of litigation in the courts of the RMI.
Plaintiffs maintain that this Court is the more convenient and
appropriate forum in which to litigate their case.  As noted
above, the Court will consider: (1) whether an adequate
alternative forum exists; and (2) "whether the balance of public
and private interests favors a different forum."  See Tuazon, 433
F.3d at 1177.

## I.   Adequate Alternative Forum

        The Court first considers whether an adequate
alternative forum is available to Plaintiffs.  See Lueck, 236

F.3d at 1143.  "Generally, an alternative forum is available where the defendant is amenable to service of process and the forum provides 'some remedy' for the wrong at issue."  Tuazon, 433 F.3d at 1178 (quoting Lueck, 236 F.3d at 1143).  This is an easy standard to meet.  See id.  As the KRS Defendants point out, Marshallese law allows for a wrongful death action, much like American law.  See 29 Marshall Islands Revised Code ("MIRC") 1, §§ 113-129 (2004); see also FNC Motion at 4-5.  Indeed, on the same day that they filed the DCHI Complaint, Plaintiffs initiated a wrongful death action in the High Court of the RMI against the same defendants.[11]  See RMI Complaint.  Moreover, as the KRS Defendants observe, the situs of events giving rise to the incident is the RMI.  Neither party has given the Court reason to believe that Defendants are not amenable to service of process in the RMI.

In their Opposition, Plaintiffs express concern that the United States has not waived sovereign immunity in the courts of the RMI, but has waived sovereign immunity in this Court. See Opposition at 6 & Ex. A.  However, the United States clarified its position in the SMJ Motion, arguing that it has not waived sovereign immunity in the courts of the RMI or this Court.

---

[11]  Because Plaintiffs filed the RMI Complaint on February 22, 2008, which was within two years of the incident on February 24, 2006, Plaintiffs appear to be within the statute of limitations for wrongful death actions in the RMI.  See 29 MIRC § 115(2).

Furthermore, as discussed in the separate Order on the SMJ Motion, the Court finds that the United States has not waived sovereign immunity in this Court.  Whether the United States has subjected itself to suit in the RMI will depend on whether Plaintiffs' claim falls within one of the exceptions in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605, as dictated by § 174(d) of the Compact of Free Association executed by the RMI and the United States.  Depending on the outcome of that analysis, Plaintiffs may be able to sue the federal Defendants in the RMI but not in this Court.

Because Marshallese law allows for a wrongful death action, and Plaintiffs have already initiated such an action, the Court finds it indisputable that Plaintiffs have "some remedy" in the RMI courts.  See Tuazon, 433 F.3d at 1178.  Thus, the Court determines that the RMI is an adequate alternative forum.

## II.  Balancing of Private and Public Interest Factors

Because an adequate alternative forum exists, the Court must balance the private and public interest factors to determine whether to dismiss the Complaint based on forum non conveniens. See Lockman, 930 F.2d at 769.  Before doing so, however, the Court must resolve the parties' disagreement over how the court should weigh the private and public factors.  Plaintiffs argue that the KRS Defendants must prove "actual hardship" and that continuance of the action in the selected forum will be

"oppressive, harassing, and vexatious to defendant." See Opposition at 2 (citing Mazinski v. Dight, 99 F. Supp. 192, 194 (D.C. Pa. 1951) and Crawford Transport Co. v. Chrysler Corp., 191 F. Supp. 223 (E.D. Ky. 1961)).   In contrast, the KRS Defendants submit that the Court need only determine whether the various public and private factors would "best be served" by litigation in the alternative forum.   See Reply at 1-2 (citing Gemini Capital Group, Inc., 150 F.3d at 1088).

Neither party offers the appropriate standard.   The Ninth Circuit has stated that a plaintiff's forum selection "should not be disturbed unless, when weighing the convenience of the parties and the interests of justice, the balance is strongly in favor of the defendant."   See Altmann v. Republic of Austria, 317 F.3d 954, 973 (9th Cir. 2002) (quoting Gulf Oil Corp., 330 U.S. at 508) (emphasis added).   As described below, the Court finds that the balance of the private and public interests strongly favors the KRS Defendants.   Accordingly, litigation in the courts of the RMI is more convenient and more appropriate.

A.   **Private Interest Factors**

The Court considers the following private interest factors:

> (1) relative ease of access to sources of proof;
> (2) the availability of compulsory process for
> attendance of unwilling witnesses, and cost of
> obtaining attendance of willing witnesses; (3)
> possibility of viewing subject premises; [and] (4)
> all other factors that render trial of the case

expeditious and inexpensive.

<u>Creative Technology</u>, 61 F.3d at 703 (quoting <u>Zipfel v. Halliburton</u> <u>Co.</u>, 832 F.2d 1477, 1487 (9th Cir. 1987)).

    1.  **Sources of Proof**

In terms of the parties, as noted above, Plaintiffs are and were at all relevant times residents of the RMI.  <u>See</u> DCHI Compl. ¶¶ 3-5.  According to Plaintiffs, Defendant KRS is a corporation organized in Delaware "or some other State in the United States and doing business on USAKA."  <u>Id.</u> ¶ 7. Plaintiffs state that Defendants Bechtel Corporation and Bechtel National, Inc. are incorporated in Nevada "or some other State in the United States and doing business on USAKA."[12]  <u>Id.</u> ¶¶ 10, 11.

In terms of the witnesses, the KRS Defendants assert that to their knowledge, none of the witnesses reside in Hawaii. <u>See</u> FNC Motion at 8.  Moreover, the KRS Defendants list fourteen potential witnesses, several percipient, who are believed to reside and work in the RMI.  <u>See</u> Reply 10-11; <u>see</u> <u>also</u> Declaration of Elton John Bain (Bain Decl.) ¶¶ 2-15.  To name a few examples, the KRS Defendants intend to call the following witnesses at trial: (1) Peterson Komanta, an employee working in the same confined space as Lajouj shortly before the explosion; (2) Vernon Cothran, a Captain with the Kwajalein Fire Department

_____

[12] The Court need not discuss the federal Defendants, as they have been dismissed from this lawsuit in a separate Order on the SMJ Motion.

at the time of the accident who entered the confined space after the explosion, examined Lajouj, and determined that there were no vital signs; (3) Greg Gale, a firefighter who also assessed Lajouj's condition after the explosion; (4) Dr. Jerry Hodge, the medical examiner who performed Lajouj's autopsy; and several others.  Id.

The KRS Defendants further note that its corporate officers with knowledge of the events in question are most likely situated in the RMI and not in Hawaii.  See FNC Motion at 7.  In addition, the KRS Defendants assert that the vast majority of the discovery will take place in the RMI.  Id. at 9.

In response, Plaintiffs claim that "there are many witnesses who reside in Hawaii or on the continental United States."  See Opposition at 3.  However, Plaintiffs name only two witnesses who actually reside in Hawaii: (1) Armando Veliz, a special agent who conducted an investigation of the accident and prepared a "Fatality Investigation" report; and (2) Wayne Coleman, Lajouj's immediate supervisor at the time of the accident.  See Opposition at 3; see also Affidavit of Plaintiffs' Counsel ("Aff.") at ¶¶ 3-11.  Plaintiffs speculate that there may be witnesses with the Army Space Missile Defense Command, which operates USAKA and is located in Hawaii.  See Opposition at 4. Plaintiffs also name Bob Babcott as a potential witness; he is a KRS employee who now lives in the continental United States.  Id.

14

at 3.

Moreover, Plaintiffs assert that Defendants' corporate officers with relevant knowledge either reside in the United States or have their principal places of residence in the United States.  Id.  Plaintiffs contend that after the accident, the KRS Defendants brought in many investigators and corporate officials from the continental United States who have now left the RMI, as the accident took place two years ago.  Id. at 4.  Plaintiffs add that employment at KRS is transient in nature; many employees work for a few years and then leave the RMI, and it would be less expensive to bring those employees to Hawaii for a trial than to the RMI.  Id.  Plaintiffs explain that they intend to retain experts who will most likely come from the continental United States, and have already retained an expert economist who resides in Hawaii.  Id. at 5.  Finally, Plaintiffs assert that any witnesses who are presently in the RMI will not incur transportation costs prior to trial because depositions will be conducted in their places of residence.  Id.

Both parties have offered proof that a number of witnesses reside in the RMI, Hawaii, and the continental United States.  However, the Ninth Circuit has stated that the "crucial focus is not on 'the number of witnesses or quantity of evidence in each locale,' but rather the 'materiality and importance of the anticipated evidence and witnesses' testimony.'"  See Tuazon,

433 F.3d at 1181 (quoting <u>Lueck</u>, 236 F.3d at 1146).  Plaintiffs were only able to identify two Hawaii-based witnesses, neither of whom were percipient.  In contrast, the KRS Defendants have identified fourteen potential witnesses who are believed to have been directly involved in the events surrounding the accident and who all live in the RMI.  Moreover, the situs of the accident was the RMI, and much if not all of the discovery will take place there.  Plaintiffs have not convinced this Court that this case has any real ties to Hawaii.  The Court finds that this factor weighs strongly in favor of the KRS Defendants.

### 2.  <u>Availability of Compulsory Process for Witnesses</u>

The KRS Defendants contend that this Court's subpoena power does not extend to the RMI.  <u>See</u> FNC Motion at 9; <u>see</u> <u>also</u> 28 U.S.C. § 91.  According to the KRS Defendants, the RMI may exercise subpoena power over all parties and witnesses in this case who reside or work within the RMI.  <u>See</u> FNC Motion at 9.  Plaintiffs do not appear to disagree, except to note that this Court would have compulsory process for individuals or corporations within its judicial district.[13]  <u>See</u> Opposition at 8.  The Court concludes that this factor weighs in favor of the KRS Defendants.

_____

[13] Plaintiffs also question whether the RMI could exercise jurisdiction over the United States; however, as discussed above and in the Order on the SMJ Motion, this Court has determined that it lacks subject matter jurisdiction over the federal Defendants.  Therefore, Plaintiffs' concern is immaterial.

### 3.   <u>Viewing Subject Premises</u>

The KRS Defendants argue that for the purposes of any site inspection, the LCU Manassas was located at USAKA within the RMI at all relevant times.  <u>See</u> FNC Motion at 8.  However, it is not clear to the Court whether the vessel is located at USAKA at the present time.  Plaintiffs do not address this factor in their Opposition.  To the extent that the LCU Manassas is still located at USAKA and a site viewing will be necessary, the Court finds that this factor weighs in favor of the KRS Defendants.

### 4.   <u>Expeditious and Inexpensive Trial</u>

The KRS Defendants argue that the court system in the RMI is largely based upon American substantive and procedural law.  <u>See</u> FNC Motion at 10.  Therefore, according to the KRS Defendants, discovery efforts and trial can be timely and efficient in the courts of the RMI.  <u>Id.</u>  Moreover, the KRS Defendants point out that many witnesses they plan to call at trial will likely speak Marshallese.  The KRS Defendants further note that since all parties and most of the witnesses are situated in RMI, transportation during discovery and trial in this Court would be unduly expensive and impractical.   <u>Id.</u>

As noted above, Plaintiffs make the general statement that several witnesses reside in Hawaii or the continental United States, and it would be less expensive to bring those witnesses to Hawaii for trial than to the RMI.  <u>See</u> Opposition at 5.

17

Plaintiffs further argue that this Court is the more appropriate forum for admiralty law cases and can draw upon the availability of "federal admiralty common law" to handle maritime cases more efficiently and uniformly.  Id. at 7.  In addition, Plaintiffs suggest that the RMI courts rarely handle cases like the instant matter.  Id.  The Court finds this last assertion doubtful and Plaintiffs have not offered any authority to justify it.  As the KRS Defendants point out, the High Court of the RMI has jurisdiction to consider admiralty claims.  See generally 27 MIRC § 603.  The Court also notes that Plaintiffs asserted admiralty jurisdiction in the DCHI Complaint but made no mention of admiralty in the RMI Complaint.  Rather, Plaintiffs are pursuing a wrongful death action in the RMI.  See RMI Complaint.  The Court is confident that the RMI courts can competently handle this tort-based lawsuit.

Plaintiffs also insinuate - without citing any authority - that judges in the courts of the RMI will be more biased than federal judges.  The Court questions the veracity of this assertion, as well.  The Court is convinced that a trial in the RMI would be more expedient and less costly than a trial in this Court.  This last private interest factor weighs strongly in favor of the KRS Defendants.

**B.   Public Interest Factors**

In addition to the private interest factors, the Court

considers the following public interest factors:

> (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; and (5) the avoidance of unnecessary problems in conflicts of law.

Creative Technology, 61 F.3d at 703-04 (citing Zipfel, 832 F.2d at 1485).

### 1.  Court Congestion

Neither party has submitted evidence of the congestion of the court dockets in the RMI.  The Court is well aware of the congestion of its own docket.  The Court sees no need to use its resources to adjudicate this dispute where Plaintiffs have a remedy in their place of residence and have not sufficiently demonstrated true connections to this district beyond the mere existence of jurisdiction.  The Court finds that this factor weighs slightly in favor of the KRS Defendants.

### 2.  Jury Interest

The KRS Defendants argue that jurors in Hawaii are less familiar with the RMI, its commercial activities, and its community, and therefore would be at a disadvantage when reviewing evidence in this case.  See FNC Motion at 12.  In response, Plaintiffs proffer that jurors in Hawaii are more sophisticated than jurors in the RMI and would therefore be

19

better equipped to assess evidence in this case.  <u>See</u> Opposition at 8.  The Court agrees with the KRS Defendants.  Jurors in the RMI would undoubtedly be familiar with USAKA.  Moreover, unlike Hawaii jurors, jurors in the RMI would be better able to assess the credibility of Marshallese witnesses, given their familiarity with the culture.  Finally, jurors in the RMI would be in a better position to assess damages.  The Court finds that this factor strongly favors the KRS Defendants.

### 3.  <u>Local Interest</u>

For similar reasons as the previous factor, the Court finds that this factor weighs strongly in favor of the KRS Defendants.  This case involves the death of a Marshallese citizen.  The accident took place in the RMI.  Hawaii has virtually no local interest in or connection to this dispute.

### 4.  <u>Familiarity with Governing Law</u>

The KRS Defendants contend that because the case involves theories of negligence, which are recognized in the RMI, there is no advantage to having the case litigated in this Court. <u>See</u> FNC Motion at 12.  Plaintiffs insist that this Court has greater familiarity with admiralty law.  The Court is convinced that Plaintiffs' lawsuit could be handled in the courts of the RMI just as competently and with similar remedies; and Plaintiffs have not asserted otherwise.  The Court finds that this factor is neutral.

### 5.   <u>Avoidance of Conflict of Law Problems</u>

Neither party addresses this factor.  The Court is not aware of any conflict of law problems.  Accordingly, the Court finds that this factor is neutral.

After weighing all of the public and private interests, the Court finds that the KRS Defendants have demonstrated that the balance is strongly in their favor.  See <u>Altmann</u>, 317 F.3d at 973 (quoting <u>Gulf Oil Corp.</u>, 330 U.S. at 508).  Moreover, Plaintiffs are citizens and residents of the RMI and therefore their choice of forum is entitled to less deference.  <u>See</u> <u>Gemini Capital Group</u>, 150 F.3d at 1091.  Given that the majority of the public and private interests militate toward litigation in the courts of the RMI, the Court dismisses the Complaint based on the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>.  <u>See</u> <u>Gemini Capital Group</u>, 150 F.3d at 1094-95 (affirming this Court's dismissal of an action based on <u>forum</u> <u>non</u> <u>conveniens</u> in favor of litigation in the courts of the State of Yap).

### <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS the KRS Defendants' Motion to Dismiss based on <u>forum</u> <u>non</u> <u>conveniens</u>.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 23, 2008.



_____
Alan C. Kay
Sr. United States District Judge

Lajouj et al. v. Kwajalein Range Services, LLC et al., Civ. No. 08-00082 ACK-KSC, Order Granting the KRS Defendants' Motion to Dismiss Based on Forum Non Conveniens.